UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE

ANN AMSBURY )
 )
V. ) NO. 2:10-CV-6
 )
MICHAEL J. ASTRUE, )
Commissioner of Social Security )

REPORT AND RECOMMENDATION

The matter is before the United States Magistrate Judge, under the standing orders of the Court and 28 U.S.C. § 636 for a report and recommendation. The plaintiff's applications for supplemental security income and disability insurance benefits under the Social Secuirty Act were denied following a hearing before an Administrative Law Judge. Both the plaintiff and the defendant Commissioner have filed dispositive Motions [Docs. 13 and 20].

The sole function of this Court in making this review is to determine whether the findings of the Secretary are supported by substantial evidence in the record. *McCormick v. Secretary of Health & Human Services*, 861 F.2d 998, 1001 (6th Cir. 1988). "Substantial evidence" is defined as evidence that a reasonable mind might accept as adequate to support the challenged conclusion. *Richardson v. Perales*, 402 U.S. 389 (1971). It must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn is one of fact for the jury. *Consolo v. Federal Maritime Comm.*, 383 U.S. 607 (1966). The Court may not try the case *de novo* nor resolve conflicts in the evidence, nor decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Even if the reviewing court were to resolve the factual issues differently, the Secretary's decision must stand if supported by substantial evidence. *Listenbee v. Secretary of Health and Human*

*Services*, 846 F.2d 345, 349 (6th Cir. 1988). Yet, even if supported by substantial evidence, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 746 (6th Cir. 2007).

Plaintiff asserts that she has various severe impairments affecting literally every system of her body. These are listed in detail at pages 3 through 6 of her brief [Doc. 14]. They include impairments to her musculoskeletal system, her respiratory system, her cardiovascular system, her digestive system, her genitourinary system, her endocrine system, neurological disorders, four mental disorders and being status post total abdominal hysterectomy for endometrial/cervical adneocarcinoma (performed in 1999).

Plaintiff was 56 years old at the time of the ALJ's decision. She has a high school education with some college courses. She has past relevant work experience as an assembler, a cleaner, a machine operator and a packer. She alleges a disability onset date of January 1, 2008.

The administrative record in this case is 633 pages in length. Plaintiff's 31 page brief offers no useful synopsis , and it refers to almost no particular portion of her medical history, but instead offers page numbers which she asserts document her various impairments. In this fashion, she asserts that documentation of her musculoskeletal impairments is found at Tr. 216, 225-28, 242, 247-48, 251-52, 261, 264, 305, 311-12, 351, 358-64, 366-67- 371, 374, 376-79, 384-85, 400-07, 409, 411-12, 424, 426, 432-33, 442, 473, 481-82, 484-85, 491-92, 494-95, 498-502, 598, 600-05, 624, 264, 267, 299, 336, 356, 363, 366, 377, 394, 406, 410, 482, 484, 494, 498, 500, 601, 604, 226-27, 242, 247, 265, 277-78, 299-300, 305, 311, 315,

318, 328, 332, 340-41, 342, 365-67, 371, 374, 376, 378, 380, 385, 400, 404-05, 407, 410, 413, 432, 445, 447, 450, 453, 481-82, 484-85, 489, 626, 434, 440, 443, 449, 450, 452, 505 and 628.

Regarding documentation of her respiratory impairments, plaintiff refers to Tr. 210, 215-16, 219, 224, 226, 228, 237, 240, 242-47, 249, 254, 257, 259, 261, 299, 301, 305-07, 311-12, 315, 333-35, 340, 342, 344, 350, 356-7, 362-3, 367-68, 370-78, 380, 383-85, 389, 391-93, 496, 498, 500, 502, 589-91, 600-02, 604-05, 607, 624, 243, 251-53, 305, 356, 358, 362-64, 368-69, 370, 372, 379-82, 384-85, 395-96, 400-03, 407-08, 412-13, 432, 450, 491-93, 495, 499, 501, 503, 590, 601-03, 605-06 and 623-24.

Plaintiff asserts that documentation of her cardiovascular impairments is found at Tr. 210, 215-16, 219, 224, 226-28, 231, 242, 247, 266, 299, 305, 311, 315, 318, 355, 358-60, 363-64, 366-67, 370-72, 374-76, 380, 382-85, 387, 393, 398, 400, 404, 406-07, 423-24, 426-27, 431-42, 434, 440, 442, 444, 449-50, 452, 455, 467-68, 476, 481-82, 484-85, 491, 493-96, 498-503, 589-90, 600-07, 626, 224, 237, 239, 264, 306, 313, 370, 398, 407, 413, 423-24, 427, 431, 444, 449, 451, 453, 489, 495, 498, 502-03, 604, 606, 624, 303, 346-48, 353, 500, 600, 411 and 624.

Proof of her digestive impairments is asserted to be found at Tr. 216, 224, 226-27, 242, 248, 261, 305, 311, 318, 361, 363-64, 366-67, 371, 376, 379, 385, 393, 400, 426, 431, 442, 449, 451, 473, 481-82, 484-85, 489, 491-92, 499, 589, 601, 603, 623-24, 628, 626, 628, and 627.

Regarding her genitourinary impairments, plaintiff refers to Tr. 210, 215, 219, 364, 379, 393, 455, 467-68, 476, 492, 500, 600, and 426.

3

Plaintiff asserts that impairments to her endocrine system are documented at Tr. 228, 265, 267, 296, 432, 450, 491-92, 494, 496, 499, 501-03, 589-90, 594, 598, 600-03, 605-07, 314, 376, 258, 263, 410, 481-82, 484-85 and 605.

Her neurological impairments are allegedly established at Tr. 267, 406, 228, 494, 500, 504, 556, 589, 598 and 600.

With respect to her severe mental impairments, plaintiff refers to Tr. 199, 201, 203, 205-11, 213-17, 219, 222, 224, 226-28, 242, 247, 257, 260-62, 267, 305, 311, 318, 355-56, 358-66, 369, 374, 376, 384-85, 392, 404, 409, 412, 426-27, 431, 442-43, 449, 454-60, 462, 464, 467-69, 471-74, 476-78, 482, 491, 493-95, 500, 503, 598, 600-01, 605-06, 208, 210-11, 214-15, 217, 219, 222, 227, 261, 355-56, 358-66, 426, 442, 454-55, 458, 467-69, 471-72, 474, 476-78, 482, 492-93, 495, 503, 606, 226, 365, 367, 398, 404, 407, 409-10, 413, 262, 265, 267, 473 and 477.

Finally, her alleged impairment from her total abdominal hysterectomy for adenocarcinoma is set out at Tr. 374, 376, 432, 442, 450, 473, 496, 607 and 624.

These impairments range from inflammation of rib cartilage to cholesterol in the eye to "forgetfulness" to COPD to congestive heart failure to hypothyroidism to varicose veins and 24 *other* discrete conditions.

The defendant Commissioner sets forth what he calls "Relevant Medical Evidence" as follows:

> In November 2007, Dr. (Wayne C.) Page conducted a consultative examination; he found no impairment-related limitations (Tr. 504-08). The same month, Dr. Joslin reviewed the record in connection with Plaintiff's disability claims and opined that Plaintiff was moderately limited in social functioning and in maintaining concentration, persistence, or pace, but, otherwise, had mild to no limitations (Tr. 519).

4

In January 2008, Plaintiff was treated for joint pain in her hands, feet, neck, and lower back (Tr. 529). She was described as doing "reasonably well" (Tr. 529). Her chronic pain syndrome was reported as stable and improved, and she was continued on her pain medication (Tr. 529).

The following month, Plaintiff was treated for depression (Tr. 531). Plaintiff reported family friction but was described as continuing to do well on medication (Tr. 531).

In April 2008, Dr. Lawrence reviewed the record in connection with Plaintiff's disability claims and found that Plaintiff was moderately limited in maintaining concentration, persistence, or pace, but, otherwise, had mild to no limitations (Tr. 533-550). That same month Dr. Pennington also reviewed the record in connection with Plaintiff's disability claims and opined that Plaintiff could lift up to fifty pounds and could stand, sit, and walk about six hours in an eight-hour day (Tr. 551-66). He further opined that Plaintiff should avoid concentrated exposure to fumes, odors, dusts, and other respiratory irritants (Tr. 554).

In July 2008, Plaintiff reported difficulties with her boyfriend, who was had resumed drinking after a period of abstinence (Tr. 205). She stated that her medication was working well, and she was encouraged "to get back into therapy" (Tr. 205). Also in July 2008, Plaintiff was treated for pain in her legs; her blood pressure was described as inadequately controlled (Tr. 583). By August 2008, however, her blood pressure was reported to be "well controlled" (Tr. 582).

In November 2008, Plaintiff visited the emergency room, complaining of shortness of breath (Tr. 567). Plaintiff reported smoking one to two packs of cigarettes per day; breathing treatments and steroids helped (Tr. 567-73). She was advised to quit smoking (Tr. 573). Diagnostic testing showed mild prominence of interstitial markings and no pneumonia (Tr. 581).

In December 2008, Plaintiff was assessed with depressive and anxiety disorders (Tr. 196). She was assessed as having a Global Assessment Functioning (GAF) score of 63, which indicates mild symptoms (Tr. 196).

Diagnostic testing of Plaintiff's chest and head in early 2009 revealed no abnormalities (Tr. 196-94, 578). Plaintiff reported in February 2009 that her blood pressure was hard to control, but later that month she was informed that she had misunderstood her medication instructions (Tr. 187, 192).

[Doc. 21, pgs. 3-5].

At the administrative hearing, the ALJ took the testimony of Dr. Robert Spangler, a Vocational Expert. Dr. Spangler was first asked to characterize the plaintiff's past relevant work. He stated that there were "only two jobs that are still relevant, an assembler in a furniture factory, which is medium, unskilled and then a cleaning service..." which Dr.

Spangler described as medium and unskilled when employed by a cleaning service and medium and skilled when she did cleaning work on her own. [Tr. 43]. Dr. Spangler was then asked to assume a person of plaintiff's age, education and work background. "This person could do medium work with frequent posturals, avoiding fumes, limited to simple, routine, repetitive work with occasional public contact." When asked if there would be jobs, Dr. Spangler identified 130,379 reduced by 40% in the region which such a person could perform. He also opined that with those impairments, the plaintiff could return to her past relevant work as an assembler. [Tr. 43-44].

In his decision, the ALJ found that the plaintiff had severe impairments of "arthralgias, fibromyalgia, chronic obstructive pulmonary disease, hypertension, a depressive disorder and generalized anxiety disorder." He found that she did not have an impairment or combination of impairments which met a listed impairment. [Tr. 12].

Mentally, he found that the plaintiff had a mild restriction in activities of daily living; a moderate difficulty in social functioning; and moderate difficulties with respect to concentration, persistence or pace. She had no episodes of decompensation. [Tr. 13].

The ALJ found that the plaintiff "has the residual functional capacity for simple, repetitive routine medium work...that allows frequent posturals and that requires no more than occasional work with the public or working around fumes, dusts or other respiratory irritants." He stated that the effects of plaintiff's severe mental impairments were incorporated into this assessment of RFC. [Tr. 13].

After a lengthy explanation of plaintiff's impairments and the reasoning behind his finding of residual functional capacity, the ALJ found that the plaintiff was capable of

returning to her past relevant work as an assembler. Alternatively, he found that the vocational expert had identified a significant number of jobs in the regional economy which the plaintiff could perform. Accordingly, she was found to be not disabled. [Tr. 17].

Plaintiff asserts that the ALJ's findings were not supported by substantial evidence. She asserts that the ALJ used "an erroneous standard of measurement" in weighing the plaintiff's credibility, and that his finding in that regard was "tainted by the ALJ's bias, prejudice, and hostility toward Plaintiff and her claims..." Plaintiff also asserts that the case should be remanded "for the receipt and consideration by a new ALJ of the results of comprehensive tests, including physical and psychological examinations conducted as defendant's expense..."

With respect to the supposed lack of substantial evidence, plaintiff asserts that the "record clearly shows that Plaintiff suffers from a myriad of impairments which individually and combined render her completely disabled and incapable of work..." and then recounts the 29 conditions described above. Plaintiff asserts that she "clearly...meets the individual disability requirements..." of six of the Listings in 20 CFR, Part 404, Subpart P, Appendix 1. These are 1.00 (Musculoskeletal System), 3.00 (Respiratory System), 4.00 (Cardiovascular System), 9.00 (Endocrine System), 11:00 (Neurological) and 12.00 (Mental Disorders). Besides independently being a basis for disability, plaintiff asserts that the combination of those listings with other impairments such as those coming under 5.00 (Digestive System) and 6.00 (Genitourinary Impairments) also render her disabled.

Indeed, the multitudinous pages listed in plaintiff's brief show numerous contacts with physicians. Some of the reports of office visits list diagnoses, while others describe

subjective complaints. What is lacking from any of these reports are opinions of the degree of severity and what their effect would be on work activities, in other words, medical assessments of what the plaintiff can or cannot do as a result of the impairment. Even if the plaintiff suffered from all 29 of her purported impairments, diagnoses, in almost all instances, do not equate to disability. What is arrayed against this are medical assessments from state agency physicians and psychologists and Dr. Page's consultative assessment.[1]

The Court has read the entire medical record and the hearing transcript. If the plaintiff had managed in her 31 page brief to point to the exact pages in the medical history which showed medical opinions of a level of severity which were ignored by the ALJ, rather than 50 or more pages per condition, it would have been a far easier task. As it is, the Court finds that the opinions of the State Agency consultants and the "discounted" opinion of Dr. Page provide substantial evidence for the RFC finding and the question posed to the vocational expert.

Plaintiff asserts that a great deal of treatment records which were generated after Dr. Page's exam, and the assessments of the State Agency physicians continue to show her severe impairments. In point of fact, these records are virtually no different in the scope of severity than her records prior to her revised onset date of January 1, 2008. In fact, State Agency reviewers submitted their assessments in April of 2008, and Dr. Page examined the plaintiff in November of 2007, less than two months before her revised onset date.

Finally, the ALJ did an exceptionally thorough job of recounting the plaintiff's

---

[1] Even though the ALJ found the plaintiff to be more restricted than Dr. Page opines, plaintiff complains of the ALJ's use of his opinion. The ALJ would have been within his rights as the finder of fact to have given more weight to Dr. Page.

medical history, which belies plaintiff's claim that no one took the time to read her medical records. [Tr. 14-16].

As stated above, the plaintiff asserts that the ALJ used an erroneous standard to gauge the plaintiff's credibility, and that he was so biased towards the plaintiff as to taint his credibility finding. The ALJ explained the rationale underlying his credibility determination in great detail [Tr. 16-17], including the lack of objective findings by her physicians, and the positive response to medication. Review of the treatment records indicates concerns by physicians regarding the truthfulness of plaintiff's assertions of the extent of her use of alcohol, and reluctance to prescribe narcotic pain medications [Tr. 187, 190]. Also, she was counseled to discontinue her heavy one and one half to two pack per day smoking habit, but continued to assert chronic and severe respiratory problems. The ALJ still found that she had a severe impairment from COPD and respiratory problems, but the extent of her continued smoking justifiably undermined her credibility to an extent. The ALJ did not use an erroneous standard.

As to plaintiff's assertion of horrendous bias against her by the ALJ, she relies primarily on exchanges which took place at the administrative hearing [Tr. 29, 45]. It is difficult in the extreme to judge from a typewritten record what non-verbal events occurred at the hearing, or the tone of voice used, or how long the pauses were between questions and answers. There appears to be little doubt that there was some degree of frustration on the part of the ALJ at these points in the hearing. But this does not equate with showing an attitude of unacceptable bias on the part of the ALJ, and certainly it does not reveal any "I'll fix you" type animosity on his part. Also, as is obvious from the hearing decision and the

9

questions he asked at the hearing, the ALJ had read the file. The administrative process of adjudicating Social Security claims by an ALJ includes steps besides the hearing itself. He would certainly have been within his rights prior to and during the hearing to develop perceptions based upon the review of the record and the testimony presented. This may be a form of bias, but not improper bias. Nothing he said at the hearing calls into question his fair-mindedness or his dedication to the process. Finally, the Court has seen much clearer examples in other Social Security cases of rudeness and incivility on the part of other ALJ's, but those, in and of themselves, were never a basis for a remanding of the case.

Plaintiff has also asserted that the case should be remanded to a different ALJ in order for the Commissioner to obtain the medical assessments needed to establish that she is disabled. There was nothing to prevent plaintiff or her lawyer from attempting to obtain medical assessments from her treating physicians for consideration by the ALJ. Further consultative examinations would be necessary if the record were not developed adequately for the ALJ to adjudicate the case. Here, there was substantial evidence to support his findings, and, as stated hereinabove, he conducted a fair analysis of all of the evidence in the case.

The Court is of the opinion that there is substantial evidence to support the ALJ's findings of residual functional capacity and his question to the vocational expert. Accordingly, it is respectfully recommended that the plaintiff's Motion for Judgment on the Pleadings [Doc. 13] be DENIED and that the Commissioner's Motion for Summary

Judgment [Doc. 20] be GRANTED.[2]

Respectfully submitted:

  s/ Dennis H. Inman
United States Magistrate Judge

---

[2]Any objections to this report and recommendation must be filed within fourteen (l4) days of its service or further appeal will be waived.  28 U.S.C. 636(b)(1).